<pre>
 1              IN THE UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA
 2                    WEST PALM BEACH
                CASE NO. 19-CR-80197-RAR-1
 3     _____

 4      UNITED STATES OF AMERICA,
                              Plaintiff
 5              vs.                          May 14, 2020

 6      BRETT HIRSCH,
                         Defendant.
 7
       _____
 8                    SENTENCING HEARING

 9          BEFORE THE HONORABLE RODOLFO A. RUIZ, II,

10            UNITED STATES DISTRICT COURT JUDGE
       _____
11
                      A P P E A R A N C E S
12
        FOR THE PLAINTIFF:    TIMOTHY P. LOPER, AUSA
13      UNITED STATES OF      U.S. Department of Justice
        AMERICA               Fraud Section, Criminal Division 12020
14                            Miramar Parkway
                              Miramar, FL 33025
15                            (202) 262-6276
                              Timothy.loper@usdoj.gov
16
        FOR THE DEFENDANT:    MICHAEL D. WEINSTEIN, ESQ
17      BRETT HIRSCH          Michael D. Weinstein, PA
                              12 SE 7th Street, #610
18                            Fort Lauderdale, FL 33301
                              (954) 761-1420
19                            Mdw@mdwlawfirm.com

20
        REPORTED BY:          GIZELLA BAAN-PROULX, RPR, FCRR
21                            United States Court Reporter
                              400 North Miami Avenue, 8th Floor
22                            Miami  FL  33128
                              (305) 523-5634
23                            gizella_baan-proulx@flsd.uscourts.gov

24

25     ALSO PRESENT:  FRANCES WEISBERG, U.S. Probation
</pre>

# P R O C E E D I N G S

*(The following proceedings were held in open court.)*

**THE DEFENDANT:**  Am I being heard?

**THE COURT:**  Yes, you're being heard, Mr. Hirsch.

**THE DEFENDANT:**  Oh, thank God.

**THE COURT:**  I think you have a good signal wherever you are now.  It's coming through.  That should work.

**THE DEFENDANT:**  Yes, sir.

**THE COURT:**  Very good.  All right.  Can everybody else hear me?

**AUSA LOPER:**  This is Tim Loper from the United States. Yes, I can hear you, Judge.

**MR. WEINSTEIN:**  Michael Weinstein here for Mr. Hirsch.

**THE COURT:**  Okay, very good.  And Ms. Weisberg.

**PROBATION:**  Yes, Frances Weisberg with U.S. Probation.

**THE COURT:**  We do have a court reporter present, so let's go ahead and formally begin at this time with Mr. Hirsch's sentencing.

This is the United States of America versus Brett Hirsch.  This is case number 19-CR-80197.

Again, for clarity of the record, let's get everyone's appearances coming through on televideo or videoconferencing equipment.  On behalf of the government, who do we have here today?

**AUSA LOPER:**  Timothy Loper on behalf of the United

1  States.

2      THE COURT:  On behalf of Mr. Hirsch, the defendant?

3      MR. WEINSTEIN:  Michael Weinstein.

4      THE COURT:  And Mr. Hirsch, you are --

03:14  5      MR. WEINSTEIN:  (Inaud.)

6      THE COURT:  Thank you.  And Mr. Hirsch -- I think we

7  lost him, didn't we?  He looks like he's not on now.

8      THE DEFENDANT:  I'm here.  I hear you, but the pic --

9  it says connected.  Can you guys hear me?

03:14  10      THE COURT:  We can hear you just fine.  It's just the

11  audio is perfect, but the visual is somewhat disconnected.  So

12  if you want to start your video, that's fine.  We just can't

13  see you right now, and you can't see us.  Or maybe you can see

14  us, but we can't see you.  Are you able to see all of us?

03:15  15      THE DEFENDANT:  I don't see anyone, but I hear you

16  clear.

17      THE COURT:  Okay.  There is a video option where you

18  can begin the video, if you wish, but the most important thing

19  I need to do is ask you about proceeding in this fashion.

03:15  20      And I want to make it clear, Mr. Hirsch, obviously,

21  you and your lawyer have submitted a waiver as permitted, so

22  you can appear over videoconferencing in lieu of appearing for

23  your sentencing live.  Do you still wish to do that?

24      THE DEFENDANT:  Yes, Your Honor.

03:15  25      THE COURT:  Okay.  So we're going to continue at this

time, and I'll also allow probation to state their appearance

for the record as well.

    **PROBATION:**  Frances Weisberg on behalf of U.S.

Probation.  Good afternoon, Your Honor.

03:15    **THE COURT:**  Good afternoon.  So I have had a chance

review the presentence investigation report which indicates

that Mr. Hirsch has a total offense level of 23, with a

criminal history category of 3, which brings our advisory

guideline provisions to 57 to 60 months, in large part although

03:15  he does score, I believe, above that, the statutory maximum

provision is 0 to 5 years.  So, again, it caps it so it's 57 to

60.  That also is followed by guideline provisions of one to

three years of supervised release.

    That is where we're at, and I reviewed the PSR along

03:16  with the addendum.  My understanding is that there is no

objection from either side as to the guideline calculations.

Am I correct that the government agrees?

    **AUSA LOPER:**  Michael, I thought it was 51 months?

    **MR. WEINSTEIN:**  Yes, Judge.  I'm looking at the

03:16  sentencing table, and I believe if he is 3 points, and it is a

total level offense level of 23, I see it as 51 to 63.

    **THE COURT:**  I have it as it's a level 2.  Actually we

have him scored as a level 3, is my understanding; that's why.

    **MR. WEINSTEIN:**  All right.  So let me go back and see.

03:17  Yes, 57 to 71.  I was looking one column over.

**THE COURT:**  Yeah, so it's 57 to 71, but, again, the high end is 60 because it's the statutory maximum.  And of course, anything below that, if -- Mr. Hirsch, you're obviously listening and following along with us -- the range doesn't prevent your lawyer, if he wishes to argue anything under 3553(a) if he thinks there's a variance that's appropriate.

Although I understand that the plea agreement, as I recall, essentially jointly recommended or agreed that anything in the guidelines would be appropriate.  I think that was what was contemplated.  Is that right, Mr. Loper?

**AUSA LOPER:**  That's right.  In paragraph 14 of the plea agreement, both the United States and the defendant agree that there are no factors or circumstances that would support the propriety of this Court's finding of a variance under 3553(a), although that's obviously not binding on probation or the Court.

**THE COURT:**  Correct.  Correct.  The Court is always able to look at that and make a determination under the guidelines, which, again, is 57 to 60 as to what's the appropriate sentence.

So most importantly, now that we have kind of done the math and double-checked it, is there any objection from the government as to total offense level of 23, criminal history category of 3, and the 57 to 60 month range?

**AUSA LOPER:**  No, Judge.

1          **THE COURT:**  All right.  And on behalf of Mr. Hirsch,

2     any objection, counsel, as it pertains to that score, now that

3     we have kind of cleared that up.

4          **MR. WEINSTEIN:**  No, Judge.  I reviewed everything.  My

03:18   5     client does have that prior where he scores, and it is what it

6     is.

7          **THE COURT:**  Yeah.  I noticed he has a couple of

8     priors, one for the boiler room, I think in New York, and then

9     he had the other one that I had also reviewed; some of the

03:18  10     foreign trading stuff and so -- and I know they were sometime

11     ago in New York.  But, yeah, he got scored on those, did some

12     time on one of them, I know.

13          So based upon the fact that there are no objections at

14     this point, and we have clarified any confusion, the Court's

03:19  15     going to go ahead and adopt the presentence investigation

16     report without objections, finding independently that it was

17     also properly scored.

18          Now having done so, we just discussed the fact that

19     there really is no motion for variance, there is no

03:19  20     applicability of a departure in this case.  Obviously I --

21          **MR. WEINSTEIN:**  Judge, can we check to see if my

22     client can see us or hear us?

23          **THE COURT:**  Sure.  Mr. Hirsch, if you want to try --

24     can you hear me?  I know you can hear me.  Can you hear me

03:19  25     clearly?

1          THE DEFENDANT:  I can hear you clearly.

2          THE COURT:  Okay.  If you want to try to reconnect

3    visually, I can wait a second, if you want to try to activate

4    your video.

03:19  5          THE DEFENDANT:  I'm trying.  It's not -- it's saying

6    "leave meeting" is the only option.  I don't want to press

7    that.

8          THE COURT:  Okay.  That's fine.

9          THE DEFENDANT:  So my question is -- Michael, so as

03:20 10    far as the cooperation, I don't understand it.  I guess he's

11    saying 3553 something.  What does that mean that was a

12    departure?

13          AUSA LOPER:  I don't know if Mr. Hirsch is -- if we

14    have swore him in.  You know, in a courtroom setting, you know,

03:20 15    Mr. Hirsch would be able to ask Mr. Weinstein questions kind of

16    one on one.

17          THE COURT:  Let me do this.  He still can here as

18    well.  We can set up a private room if he needs to speak to his

19    counsel.  I've done that already on Zoom.

03:20 20          MR. WEINSTEIN:  I can address this, as Brett can hear

21    me.  I've probably advised Brett 15 to 20 times that pursuant

22    to the presentence investigation report, paragraph 9, that we

23    are not asking for -- the Court's not going to -- there's no

24    recommendation for an upward or a downward variance.  It is

03:20 25    what it is.  He knows that.

1        Mr. Loper will concur that my client is performing and

2 continues to perform assistance for the government and may have

3 made it extremely clear that any benefit will come with the

4 Rule 35 as opposed to a 5K1.  That is what has been made clear.

03:21 5 I told my client more times than -- I would be a rich man if I

6 had a dollar for every time I told him.

7        **THE COURT:**  Well, Mr. Hirsch, let me make it clear

8 also to help you understand even further from the Court

9 directly.  What counsel is saying is correct.

03:21 10       At this point, your plea agreement, as we discussed at

11 your change of plea hearing, is really limited to a sentence

12 within the guideline range as recommended to me.

13       Of course, that is capped statutorily at the 60

14 months.  And there are no grounds right now, that I have seen

03:21 15 in the record, to support a variance.

16       Now, I will be frank with you, it's 57 to 60 months, I

17 am comfortable -- and I'll hear from the government in a

18 moment -- with the low end of that.  I don't think it needs to

19 be 60.  57 is fine.  I don't think there's any need to max it

03:22 20 out at the top of the guideline range under the statute.

21       Now, that being said, the option or the possibility of

22 going below the sentence that I give you today is on the table

23 as you continue to cooperate.  It would come through a Rule 35

24 motion, not one under 5K1.

03:22 25       There's avenues to modify your sentence later.

1 Continue what you are doing.  Of course, the government makes

2 no promises nor do I, as Mr. Weinstein has told you, but down

3 the line, after you've been sentenced, if there is a motion

4 from the government under Rule 35, and the lawyer and the

03:22  5 prosecutor come to me, then I can review that and ultimately

6 look at the possibility of reducing your sentence, whatever you

7 get today, based upon future cooperation.  Does that make it

8 clear for you?

9          THE DEFENDANT:  Yes, sir.

03:22 10          THE COURT:  Okay.  Now, again, I understand,

11 Mr. Loper, your concern.  Other than him making it clear by

12 raising his right hand and being sworn in again, he has

13 submitted his signed statement that he wants to proceed this

14 way and confirm that on the record.

03:23 15          I could swear him in and ask him to do it on the

16 record again if you are concerned in an abundance of caution

17 when we're proceeding this way.  Is that something you're

18 concerned about?

19          AUSA LOPER:  No, Judge.  I think we have addressed the

03:23 20 concern I had.

21          THE COURT:  And Mr. Hirsch, again, I don't necessarily

22 need to administer the oath again.  I know that you signed in

23 the forms, we went ahead and double checked them and docketed

24 them this morning, that you are comfortable proceeding with

03:23 25 sentencing in this fashion without having to be physically

1  present.  Correct?

2         THE DEFENDANT:  Correct, Your Honor.

3         THE COURT:  And I suspect, having seen for a split

4  moment why you may have lost your video, that you are working

03:23  5  at the restaurant right now.  Is that right?

6         THE DEFENDANT:  Yes, Your Honor.

7         THE COURT:  Yeah.  And I'm glad that you're doing your

8  best, given that you have restitution and other amounts you're

9  going to be due and owing, that you continue to do your best

03:23  10  providing food for the senior citizens.

11         I read it in the PSR, and I'm glad that at least

12  you've done your best to accommodate the work schedule and

13  still stay in business during the COVID-19 pandemic, which is a

14  good thing.

03:24  15         THE DEFENDANT:  Thank you, Judge.

16         THE COURT:  Go ahead.  I'm sorry.  You had a question

17  for me?

18         THE DEFENDANT:  Mike, are you going to bring up my

19  health stuff right now?

03:24  20         MR. WEINSTEIN:  We're not there yet, Brett.  We'll get

21  there.  We'll get there.

22         THE DEFENDANT:  Sorry.

23         MR. WEINSTEIN:  Brett is an anxious New Yorker, for

24  lack of a better word of saying it.

03:24  25         THE COURT:  It's understood.  And we'll definitely

talk about that in just a moment.  I think at this point there

is no grounds for departure.  It's not being requested.  It's

not authorized under this act.  Even if it were, I would

exercise the discretion not to depart.

03:24    And in terms of finding a sentence under 3553(a) that

is sufficient but not greater than necessary to comply with the

purposes of sentencing, I looked at his record, Mr. Hirsch's

record.

As I stated already -- because I'm not a fan of hiding

03:24    the ball -- I think those three months of wiggle room are

warranted, and I would sentence him to the bottom of the

guideline range, but I don't believe, as the plea agreement has

already contemplated not asking for it, I independently do not

see any grounds for a variance.

03:25    And to be clear, I think the big thrust of that -- and

I'm sure the government would agree -- in terms of not finding

a variance grounds is because of the vast amount of fraud,

meaning the dollar amount generated, the pervasiveness of the

fraud, to me is startling.  It's a very, very large number.

03:25    It's very thorough.  It's very complex in the way in which the

kickbacks are being done.  I read through it, so those kinds of

facts count against finding for a variance.

And so under 3553(a), I don't believe I see

independent grounds for a variance, and I will double check

03:25    again, Mr. Weinstein, at this point you do not wish to argue,

1   as contemplated in the plea agreement, for a variance under

2   3553(a).  Is that correct?

3          **MR. WEINSTEIN:**  Judge, the answer is yes.  And if I

4   can just elaborate.  We had prepared a few motions, and I ran

03:26   5   everything by the government before I filed it.  And Mr. Loper

6   was candid and said that anything we filed would be a violation

7   of the agreement.

8          So I just wanted my client to hear that and Mr. Loper

9   to hear that.  So we, therefore, go along with what the plea

03:26   10   agreement said, that is, we're not going to argue for a

11   variance because that's what we agreed to.  And we're going to

12   take the government at their word regarding Rule 35 on the back

13   end.

14          **THE COURT:**  And that's understood.  And I think, in

03:26   15   the abundance of caution, I think because you are honoring your

16   plea agreement and the possibility of keeping the Rule 35 open,

17   I will add that I independently, given that it is a

18   recommendation, don't find variance grounds anyway under

19   3553(a) that I would ultimately go ahead and impose.

03:26   20          And therefore, there's an independent review of these

21   factors -- there always must be under the factors -- to make

22   sure the punishment is not greater than necessary to comply

23   with all the stated objectives under 3553(a), including the

24   nature and circumstances of the offense, which to me, again,

03:27   25   counts against any kind of variance given the voluminous

1  complexity of the fraud and the loss amount, the history and

2  characteristics of the defendant.

3       We do not have a first-time offender.  I know it's

4  been a long time, but we do have some fraud history.  And so

03:27  5  that's another problem.  And, again, unwarranted sentencing

6  disparities are less of a concern when you look at the nature

7  of sentencings for this type of fraud.

8       I've done a number of them, and I can tell you that

9  this is actually on the lower end for this kind of volume of

03:27 10  fraud.  And I think Mr. Loper, you would agree with me, that

11  I've seen sentences in excess of 57 months, well in excess, for

12  fraud that has been around this scale, which is the 2 million,

13  2.5 million number, I think, is the one we put on his

14  involvement.  Is that correct, on the government's end.

03:27 15       **AUSA LOPER:**  I would agree wholeheartedly, Judge.

16       **THE COURT:**  So in light of all that, and we don't have

17  a variance and everything else, I think that what, Mr. Hirsch,

18  you want to know about -- and I know what's coming -- is I'm

19  going to pronounce sentence at this time.

03:28 20       And then after pronouncing sentence, I will entertain

21  arguments regarding any requests when it comes to self

22  surrender, when it comes to health, when it comes to the

23  pandemic.  This is not uncommon.  I deal with these types of

24  motions now on a regular basis, and I'm all ears.

03:28 25       But I think at this point, we can go ahead and proceed

1   with the imposition of sentence and then deal with things like

2   placement and surrender after.  Is that okay, Mr. Weinstein.

3           **MR. WEINSTEIN:**  That's what I expected, Judge.

4           **THE COURT:**  Yes, Mr. Loper, go ahead.

03:28  5           **AUSA LOPER:**  I'm sorry.  Before you pronounce

6   sentence, I just want to make sure there's one thing that's

7   crystal clear on government's (inaud.), Mr. Weinstein, and that

8   he was going to rely on the word of the government regarding a

9   Rule 35.

03:28  10          I just want the record to be crystal clear about what

11  that word is; it's that the government will, in good faith,

12  consider filing a motion for a reduced sentence based on

13  Mr. Hirsch's cooperation, if that cooperation remains truthful

14  and accurate as it has been up to date (inaud.) substantial,

03:29  15  but there are no guarantees.

16          **THE COURT:**  Okay.  So Mr. Hirsch, you heard that.  I

17  mean, again, we can never guarantee, but the most important

18  thing is I know your lawyer has repeatedly told you, being

19  experienced and guiding you through this, the most important

03:29  20  thing is that you continue to do everything you have been doing

21  to increase the likelihood that the government can entertain

22  such a motion and it can be brought to me.  Do you understand?

23          **THE DEFENDANT:**  Yes, Your Honor.

24          **THE COURT:**  Remember, the bottom line is we can never

03:29  25  make guarantees because we don't know the future, but I know

1  all good-faith efforts will be taken, and I will seriously

2  consider any Rule 35 motions made by the government.  Okay?

3       **THE DEFENDANT:**  Yes, sir.

4       **THE COURT:**  Okay.  So that being said, I want to

03:29   5  double check, also, Ms. Weisberg, anything I may have missed

6  before I pronounce sentence?

7       **PROBATION:**  No, Your Honor.

8       **THE COURT:**  Okay.  The Court has considered the

9  statements of all parties, the presentence report which

03:29  10  contains the advisory guidelines, and the statutory factors as

11  set forth in 18 USC 3553(a), it is the finding of the Court the

12  defendant is not able to pay a fine as well as restitution.

13       Now, it is the judgment of the Court that the

14  defendant, Brett Hirsch, is committed to the Bureau of Prisons

03:30  15  to be imprisoned for 57 months.

16       It is further ordered that the defendant shall pay

17  restitution in the amount of $4,624,456.  During the period of

18  incarceration, payment made shall be made as follows:

19       If the defendant earns wages in a Federal Prison

03:30  20  Industries or UNICOR job, then the defendant must pay 50

21  percent of wages earned toward the financial obligations

22  imposed by this judgment in a criminal case.

23       If the defendant does not work in a UNICOR job, then

24  the defendant must pay a minimum of $25 per quarter towards the

03:30  25  financial obligations imposed in my forthcoming order.

1          Now, upon release from incarceration, the defendant

2    shall pay restitution at the rate of 10 percent of monthly

3    gross earnings until such time as the Court may alter that

4    payment schedule in the interest of justice.

03:30    5          The U.S. Bureau of Prisons, U.S. Probation Office, and

6    U.S. Attorney's Office shall monitor the payment of restitution

7    and report to the Court any material change in the defendant's

8    ability to pay.

9          These payments do not preclude the government from

03:31   10    using any other anticipated or unexpected financial gains,

11    assets, or income of the defendant to satisfy the restitution

12    obligations.

13          The restitution shall be made payable to the Clerk of

14    Courts and then forwarded to the victims.

03:31   15          Now, upon release from imprisonment, the defendant

16    shall be placed on supervised release for a term of three

17    years.  Within 72 hours of release, the defendant shall report

18    in person to the probation office in the district where

19    released.

03:31   20          While on supervised release, the defendant shall

21    comply with the mandatory and standard conditions of supervised

22    release, which include not committing any crimes, being

23    prohibited from possessing a firearm or other dangerous device,

24    not unlawfully possessing a controlled substance, and

03:31   25    cooperating in the collection of DNA.

03:31

03:32

03:32

03:32

03:32

03:32

1          The defendant shall also comply with the following

2     special conditions:  Substance abuse treatment, financial

3     disclosure requirement, no-new-debt restriction, permissible

4     search, healthcare business restriction, unpaid restitution,

5     fines, or special assessments as noted in part F of the

6     presentence report.

7          It is further ordered that the defendant shall pay

8     immediately to the United States a special assessment of $100.

9          That brings the total sentence of 57 months of

10    imprisonment, $4,624,456 in restitution, three years of

11    supervised release, and $100 special assessment.

12         Now, I know we've already entered multiple orders of

13    forfeiture, but to be clear, the defendant's right, title, and

14    interest to the property identified in the preliminary order of

15    forfeiture which has been entered by this Court already

16    including the amended order and incorporated by reference

17    during this hearing is hereby forfeited.

18         Now that sentence has been imposed, does the defendant

19    of his counsel object to the Court's finding of fact or to the

20    manner in which sentence was pronounced?

21         **MR. WEINSTEIN:**  Judge, no, I don't object to the -- I

22    don't object to the sentence.  I'm sorry.  I'm just looking at

23    my notes while we talk.

24         **THE COURT:**  Sure.

25         **MR. WEINSTEIN:**  There's obviously some issues between

myself and the government regarding that forfeiture, but I'm

going to leave that between myself and the government.

**THE COURT:**  And you saw, I wrote the order on that

already.  I'm sure Mr. Loper saw it.  I reviewed it and felt

03:33   that the case law had foreclosed the ability to address it as

requested by defendant, but that's duly noted.  Go ahead.

**MR. WEINSTEIN:**  That was it, Judge.

**THE COURT:**  Let me be clear on the record that, of

course, you have the right to appeal the sentence imposed,

03:33   understanding that there's been no objection.  Any notice of

appeal must be filed within 14 days after entry of the

judgment, and if you're unable to pay the cost of an appeal,

you may apply for leave to appeal in forma pauperis.

Now, let's deal with a couple of key issues here

03:33   before we conclude.  Number one, I suspect, Mr. Weinstein, you

want me to go ahead and recommend to the Bureau of Prisons that

he be kept in a local facility, Southern District of Florida?

**MR. WEINSTEIN:**  Absolutely, Judge.  And, again, I'm

looking at notes while we talk.

03:33   **THE COURT:**  Not a problem.  I agree with that.  That's

not a problem.  I'll put it in there.

The next thing is I want to talk and see if the

government has any position about surrendering for service of

sentence.  Obviously, these are different times.  They're

03:33   challenging times.

1          And as I've told probation and the government, unless

2     it's someone -- and most of the time those people are already

3     in custody because I do the sentencings from the cell block,

4     just like I do them out of custody like today, then it's not an

5     issue.

6          But for those out of custody, provided there's been no

7     issues, and they have been complying with all pretrial

8     conditions, and I know that in this case, we had one issue with

9     Mr. Hirsch, with one positive drug test early on.  Since then

03:34  10  he has had no problems.

11          And I know he did some treatment.  He went and saw

12     some specialist on that and got some substance abuse treatment,

13     so I'm comforted by that.  And he's been working --

14          **THE DEFENDANT:**  I still -- I still go every month.

03:34  15          **THE COURT:**  That's perfect.  I want you to keep going.

16     But my point is I have not had any issues.  He's obviously not

17     violent, no concerns.  I am prepared to give him a surrender

18     date that will also give us some time for him to get his

19     allocation by the Marshals, his designation, and any bit of

03:34  20  time helps as our prisons continue to roll out more measures

21     against any COVID-19 concerns.

22          So I would assume the government has no problem with a

23     surrender date; is that correct?

24          **AUSA LOPER:**  Not at all, Judge.  And just for your

03:35  25  information, I had anticipated Mr. Hirsch will be testifying in

1  two trials, assuming that the COVID pandemic doesn't move those

2  dates.  One trial is before Your Honor, starting October 24th,

3  in the case of United States versus Patel.

4         **THE COURT:**  Patel, yeah.

03:35  5       **AUSA LOPER:**  And then Mr. Hirsch will also be

6  testifying, I anticipate, in the case of United States vs.

7  Calib Satari (ph.), in the Eastern District of Louisiana, which

8  is specially set for January 11.

9         So the government doesn't object to a surrender date

03:35 10  even after those trial dates, if Your Honor is so inclined.

11        **THE COURT:**  I'm fine with that.  Quite honestly, I

12  want him to be able to keep working.  The more he works, the

13  more he's paying restitution.  So that's good for everybody.

14  The longer he's out, the better chance we have of getting

03:35 15  COVID-19 under control.  I'm comfortable with that as well.

16        I think I'm a little concerned about trying to do

17  something so far out.  I think the best thing to do is maybe do

18  something like -- you know, get me through the fall, perhaps;

19  you know, maybe do like 180 days.  And then you give me an

03:36 20  update, and he can file a motion.  Mr. Weinstein can file a

21  motion either agreed or something that is without objection.

22  Then I can extend it further.  I just don't like the idea of

23  having him out of sight out of mind that long, but I don't see

24  any problem.

03:36 25        Gracie, could you find me a date that would take us,

1  let's say, 180 days, something like that?

2         **THE COURTROOM DEPUTY:**  November 9th.

3         **THE COURT:**  I'm going to put it for November 9th.

4  Again, that doesn't mean that I won't extend it again for him

03:36  5  to go to Louisiana.  And that, of course, is also wholly

6  dependent on if he's even able to do my trial.  I'm hoping for

7  October, but you know how things are changing.

8         So I'm going to say November 9th at noon will be his

9  surrender date at -- November 9th, 2020.  As we approach that

03:36  10  date, we can always re-evaluate what's going on.

11        Now, with that being said, I don't know,

12  Mr. Weinstein, how much of his health issues are a concern

13  right now since we're giving him six months before we even got

14  to contemplate his surrender.  What was the health issue he

03:37  15  wanted you to raise?

16        **MR. WEINSTEIN:**  Diabetes, Judge.  And I'll speak for

17  him; he can stand to lose a few pounds so he's not -- so -- and

18  he knows that.  He's got weight issues, and he has diabetes

19  Type II.

03:37  20        Not that it's a health issue for him, but he's got an

21  elderly mother he takes care of as well, and the PSI does not

22  reflect that, not only does he have his two children, but he's

23  also a stepdad to other children as well with his girlfriend,

24  so he takes care of more than just his two kids.  So there's a

03:37  25  lot going on.

1          So obviously November is appreciated.  And if we end

2     up going to the beginning of next year, that would be

3     appreciated as well.

4          And Judge, before I forget -- and Mr. Loper will

03:37   5     certainly agree with this -- my client had a very difficult

6     cocaine habit, and he was first interviewed by the government.

7     I would strongly recommend the RDAP program, and I would ask

8     that the Court approve that as well.

9          **THE COURT:**  It will be approved.  I did note that he

03:38   10    did have and was battling a very serious cocaine problem.  I

11    noted that in the PSR.  And it was not lost on the Court that

12    as far as I can tell, he's been a very supportive dad, both for

13    the stepchildren and his own children.  I did note that as

14    well.

03:38   15         And so without question, we will put an RDAP

16    recommendation along with the location in the Southern District

17    of Florida, but I did notice paragraph 72 talked about his

18    cocaine use.

19         Now, you obviously, Mr. Hirsch, you've got to

03:38   20    remember, one of the important things about me having faith in

21    you to do what you've got to do and stay out until your

22    surrender date is really motivated by you staying clean.

23    You're going to keep getting tested.

24         If you go out and you use, and you commit a crime

03:38   25    while you're out, I'm going to bring you in, and you're going

1   to have to go in, and you won't come out.  You'll start your

2   sentence early.  You understand?

3           **THE DEFENDANT**:  Absolutely, Your Honor.

4           **THE COURT**:  Okay.  So I can't think of any better

03:39   5   motivation than that.  You want to be able to be out for almost

6   six to 12 months.  The best thing we can do is keep helping the

7   government, do what you've got to do, follow your lawyer's

8   advice.  You'll testify at these trials when they come up.  You

9   stay clean.  You keep going to therapy.

03:39   10          Look, I read the PSR.  I know mom doesn't know.  I

11   know brother doesn't know about what's going on.  You've got

12   some time to kind of bring yourself to tell them, but you can

13   hold off on that because you're not going in tomorrow; you're

14   not going in next month.

03:39   15          And, look, if you cooperate and if you do what you've

16   got to do, then there's always the potential of a motion coming

17   down the Pike -- no promises -- but keep that in mind as

18   something else that could assist you.

19          But this will give you enough time.  I want you to

03:39   20   keep working, staying healthy and -- mentally and physically,

21   as Mr. Weinstein suggests, prepare yourself for that eventual

22   surrender date.

23          The time will come when you've got to go in, but the

24   more time I give you to mitigate and get ready, I think the

03:40   25   better you'll be, and the better our prisons will be, so we

1 don't get another person in there, unnecessarily, especially

2 someone like you, who I have faith, is not going to violate the

3 law, you're not a flight risk, you're not a dangerous guy,

4 you've got obligations, and you've got kids to take care of.

03:40 5 So keep doing what you're doing. Okay? Just Keep doing what

6 you're doing.

7        THE DEFENDANT:  Thank you so much.

8        THE COURT:  You got it.  You got it.  Okay?  So I'm

9 fine with that.  And look, down the road, we can talk about

03:40 10 that surrender date as it gets close.  If we need more time,

11 I'm open minded.  I'll listen if there's something you need to

12 be testifying, we'll accommodate you.

13        THE DEFENDANT:  Thank you.

14        THE COURT:  Okay.  Mr. Weinstein, is there anything

03:40 15 else you wanted me to address before we conclude today?

16        MR. WEINSTEIN:  No, Judge, you did a good job of doing

17 my job.

18        THE COURT:  Not a problem.  Happy -- as long as we can

19 make it easy for everybody, and I know how this is a little bit

03:40 20 of a challenging venue and forum, so I really appreciate you

21 guys getting on the line with me.  Mr. Loper, anything I may

22 have missed?

23        AUSA LOPER:  Nothing further from the government,

24 Judge?

03:40 25        THE COURT:  Anything else, Ms. Weisberg?

1          **PROBATION:**  No, Your Honor.

2          **THE COURT:**  All right.  And so we're going to let you

3    guys go.  All right, Mr. Hirsch, keep doing what you've got to

4    do, stay safe, everybody.  And I'm sure we'll be in touch in

03:41   5    the fall.  Okay?

6          **THE DEFENDANT:**  Thank you and take care.

7          **THE COURT:**  Take care, guys.  Thank you.  Stay safe.

8    Bye.

9              (Thereupon, the above hearing was concluded.)

10

11                        *          *          *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           **C E R T I F I C A T E**

2

3              I hereby certify that the foregoing is an accurate

4      transcription of the proceedings in the above-entitled

5      matter.

6

8         06/02/2020         _____

9      DATE COMPLETED        GIZELLA BAAN-PROULX, RPR, FCRR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25